UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| HUMBERTO NIETO,　　　　　) | Case No. 8:17-cv-01381-JDE |
| 　　　　　　　　　　　　　) | |
| 　　　　　　Plaintiff,　　　) | MEMORANDUM OPINION AND |
| 　　　　　　　　　　　　　) | ORDER |
| 　　　　v.　　　　　　　　) | |
| 　　　　　　　　　　　　　) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| 　　　　　　　　　　　　　) | |
| 　　　　　　Defendant.　　) | |
| _____) | |

Plaintiff Humberto Nieto ("Plaintiff") filed a Complaint on August 10, 2017, seeking review of the Commissioner's denial of his application for disability insurance benefits ("DIB"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on July 13, 2018. The matter now is ready for decision.

## I.

## BACKGROUND

Plaintiff's claim for DIB has endured a lengthy path. Plaintiff initially filed his claim for DIB in 2007. Administrative Record ("AR") 360-62. In June

2009, he was found disabled by an Administrative Law Judge ("ALJ"). AR 123-35. The Social Security Administration reviewed the decision and determined that Plaintiff's entitlement to benefits ceased, initially and upon reconsideration, because his health had improved. AR 174-77, 204-06.

Plaintiff again sought review before an ALJ. AR 207-08. The ALJ conducted a hearing, and, in April 2013, issued a decision determining Plaintiff's disability ceased and denying Plaintiff's claim. AR 58-89, 146-66. The Appeals Council granted Plaintiff's request for review, found legal error, and reversed and remanded for further proceedings. AR 167-73.

On July 11, 2016, an ALJ conducted another hearing. AR 90. Plaintiff, represented by counsel, appeared and testified at the hearing, as did a medical expert, and a vocational expert ("VE"). AR 92-122.

On September 1, 2016, the ALJ issued a written decision finding Plaintiff's disability had ended July 1, 2011. AR 29, 40. The ALJ found that as of the June 2009 disability determination, the comparison point decision ("CPD"), Plaintiff had the following medically determinable impairments: degenerative disc disease of the lumbar spine; right shoulder arthritis; and depression. AR 30. The ALJ recounted that those impairments had resulted in a residual functional capacity ("RFC") of less than a full range of sedentary work, among other limitations. AR 30. Next, the ALJ found that Plaintiff did not engage in substantial gainful activity through July 1, 2011. Id. The ALJ concluded that the medical evidence established that as of July 2, 2011, Plaintiff suffered from the following medically determinable impairments: degenerative disc disease of the lumbar spine; and degenerative disc disease of the cervical spine. AR 30-31. The ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment since July 1, 2011. AR 31-32. The ALJ found that medical improvement occurred as of July 1, 2011, and the impairments existing at the

2

time of the CPD had decreased in severity to the point where Plaintiff had the RFC to: (1) occasionally lift at least 20 pounds; (2) frequently lift and carry up to 10 pounds (3) stand and walk at least four hours in an eight-hour day; (4) sit for at least six hours in an eight-hour day; and (5) occasionally climb, balance, stoop, kneel, crawl, crouch, and use ladders, ropes or scaffolds. AR 32.

The ALJ further found, despite Plaintiff's medical improvement, as of July 1, 2011, he continued to have a severe impairment or combination of impairments that caused more than minimal limitation in his ability to perform basic work activities. AR 33. Nonetheless, the ALJ found, based on the impairments as of July 1, 2011, and through the date of the decision, Plaintiff had the RFC to perform light work with the following limitations: he could (1) occasionally lift at least 20 pounds; (2) frequently lift and carry up to 10 pounds; (3) stand and walk at least four hours in an eight-hour day; (4) sit for at least six hours in an eight-hour day; (5) occasionally climb, balance, stoop, kneel, crawl, crouch, and use ladders, ropes or scaffolds; (6) occasionally reach overhead; and (7) frequently handle, reach, and finger. AR 33-37.

The ALJ found, as of July 1, 2011, Plaintiff was incapable of performing his past relevant work as a machinist. AR 37. The ALJ also found Plaintiff was a "younger individual" closely approaching advanced age who had limited education, but was able to communicate in English. AR 38. Considering Plaintiff's age, education, work experience, and RFC, the ALJ found jobs existed in significant numbers in the national economy that Plaintiff could perform, including the unskilled occupations of office helper, inspector hand packager, and bench assembler. AR 38-39. Accordingly, the ALJ concluded that Plaintiff's disability ended July 1, 2011, and Plaintiff remained not disabled through the date of the decision. AR 39-40.

On June 15, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-7.

# III.

## LEGAL STANDARDS

**A. Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Lastly, even when the ALJ commits legal error, the Court upholds the decision where that error is harmless. Id. at 1115. An error is harmless if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

**B. Standard for Determining Disability Benefits**

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Id. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015).

If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from his impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p. After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform his past relevant work, either as he "actually" performed it when he worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016).

If the claimant cannot perform his past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or

regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, he is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See Id. at 1099.

The claimant generally bears the burden at each of steps one through four to show that he is disabled, or that he meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show that he is disabled. See, e.g., Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## IV.

## DISCUSSION

The parties present two disputed issues (Jt. Stip. at 6):

Issue No. 1: Whether the ALJ properly determined that Plaintiff is literate; and

Issue No. 2: Whether the ALJ properly considered Plaintiff's subjective testimony about his limitations.

## A.    Literacy Finding

Plaintiff alleges the ALJ erred in finding Plaintiff is able to communicate in English. Jt. Stip. at 6-12. Plaintiff contends he is "in fact" illiterate. Jt. Stip. at 7. Plaintiff also points out that the ALJ in the 2009 decision found Plaintiff illiterate, and contends that the ALJ in the instant decision "does nothing in the [2016] decision to rebut the finding." Jt. Stip. at 10, citing AR 134.

### 1. **Applicable Law**

Social Security regulations take into account English literacy and the ability to communicate in English when determining a claimant's education as

a vocational factor. 20 C.F.R. § 404.1564(b)(5). The ability to communicate in English is important because "English is the dominant language of [this] country" and as such, retaining a job may be difficult for someone without English skills "regardless of the amount of education the person may have in another language." Id. However, "[w]hile illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(I).

The Commissioner considers a claimant "illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. §§ 404.1564(b)(1). Literacy or education level is relevant only to the step five inquiry and not to existence of a disability; thus, the Commissioner bears the burden of establishing whether a claimant is literate. Silveira v. Apfel, 204 F.3d 1257, 1261 & n.14 (9th Cir. 2000) (en banc).

## 2. Analysis

At Step Five, the ALJ determined Plaintiff "has a limited education and is able to communicate in English." AR 38. The Commissioner points to several factors supporting this determination.

First, the ALJ noted that, while Plaintiff used a Spanish interpreter at the hearing, he was able to participate in the consultative psychiatric examination without an interpreter. AR 38. Indeed, in October 2011, Plaintiff took part in a consultative psychiatric evaluation with Dr. Sohini Parikh. The doctor reported that his source of information for the examination was Plaintiff, "who speaks English." AR 630. The doctor also found Plaintiff was attentive and

oriented, and his speech was "spontaneous with a good vocabulary." AR 633.
The doctor further stated that Plaintiff's voice was "normal in tone, rate, and
rhythm." Id. Accordingly, the ALJ's reliance on Plaintiff's ability to
communicate during the examination is supported by the record. See, e.g.,
Decovich v. Colvin, 2015 WL 3559128, at *9 (D. Nev. June 5, 2015) (ALJ
properly found claimant was able to communicate in English in part because
she spoke English during consultative examination).

Next, the ALJ noted Plaintiff was taking English classes at the local
community college. AR 38. In March 2011, Plaintiff appeared at an in-person
continuing disability review reconsideration interview. Plaintiff answered a
question about whether he had "received any education since [his] last
disability decision" in the affirmative, stating that he was going to school and
"[l]earning English." AR 384. Later, in an August 2011 disability report,
Plaintiff stated, "I go to English classes at Centennial College, thru [sic]
Rancho Santiago College" AR 405. The ALJ properly relied on Plaintiff's
education in assessing his literacy.[1] See, e.g., Flores v. Astrue, 2011 WL
13143148, at *5 (N.D. Cal. Sept. 19, 2011) (ALJ properly determination that
claimant was illiterate but still capable of understanding verbal elementary
English in part because claimant took English classes at the community
college), aff'd, 546 F. App'x 638 (9th Cir. 2013).

The Commissioner points to additional evidence before the ALJ
supporting the determination. For example, at the 2009 administrative hearing,
Plaintiff stated that he spoke and read "a little bit" of English. AR 55-56. By
the time of the March 2011 interview, the Agency interviewer noted Plaintiff

---

[1] In 2009, the ALJ made a one-line finding that Plaintiff was illiterate. AR 134.
Here, the ALJ articulated reasons supporting the literacy finding, which included
developments since the last finding. AR 38. Contrary to Plaintiff's assertion, the ALJ
did not "do[] nothing in the decision to rebut the [prior] finding." Jt. Stip. at 10.

8

could "speak and understand English." AR 376. Again, at an April 2012 continuing disability review hearing, a hearing officer observed that Plaintiff "was able to understand and respond to all questions in an appropriate manner." AR 195. The officer further noted "[t]he Hearing was conducted in English, and no difficulty with communication or understanding was noted." Id. Finally, at the 2013 hearing, the ALJ commented that Plaintiff understood English fairly well at the prior hearings, and Plaintiff confirmed he did, but stated he understands English better than he can speak it. AR 60. The Commissioner also notes that Plaintiff lived in the United States since 1980 and worked for many years as a machinist. Jt. Stip. at 13-14; AR 631. The VE testified that this was semi-skilled work (AR 112), and the Dictionary of Occupational Titles ("DOT") classifies the occupation as "language level 3."[2] DOT § 600.380-018, 1991 WL 684684. Plaintiff's ability to work at this language level for a lengthy period of time is further evidence of his literacy.

For the reasons outlined above, the Commissioner has met her burden of showing that the literacy determination is supported by substantial evidence.

**B.    Plaintiff's Subjective Symptom Testimony**

In Issue No. 2, Plaintiff argues the ALJ improperly discounted her subjective symptom testimony.

### 1. Applicable Law

Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain

---

[2]  This language level requires the ability to (1) read "a variety of novels, magazines, atlases, []encyclopedias[,] . . . safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work" (2) write "reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech"; and (3)speak "before an audience with poise, voice control, and confidence, using correct English and a well-modulated voice." 1991 WL 684684.

or other symptoms alleged, absent evidence of malingering, the ALJ must provide "'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms." <u>Treichler v. Comm'r Soc. Sec. Admin.</u>, 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted); <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004); <u>see also</u> 20 C.F.R. § 416.929. The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." <u>Moisa</u>, 367 F.3d at 885 (citation omitted). However, if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. <u>See</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001). Finally, the ALJ's credibility finding may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. <u>See</u> <u>Batson v. Comm'r Soc. Sec. Admin</u>, 359 F.3d 1190, 1197 (9th Cir. 2004).

### 2. Analysis

During the 2009 hearing, Plaintiff testified he stopped working because he had pain that starts in his neck and travels down his back, and eventually causes throbbing in this leg. AR 49-50. He had surgery (in 2005 (AR 568)), which "improved [his condition] a lot," but still had problems. AR 52. He could stand for 10 to 20 minutes, left about eight pounds, could not walk much and could control his pain by lying down about five times a day. AR 53.

At the 2013 hearing, Plaintiff stated that his surgery helped "a little bit," but he still had pain. AR 63. He walked for about 30 minutes a day and did exercises, which helped, but certain exercises and running exacerbated his back problems. AR 63, 68-69. He had pain and numbness down his back to his hips, which prevented him from standing or sitting for more than 20 to 25 minutes. AR 64-65, 72, 77. He had weakness in his hands. AR 78. He helped around the

10

house by making the bed, sweeping, doing laundry, preparing breakfast for his children, and driving or walking them to and from school. AR 65, 67, 72-73, 75. He dressed himself and helped his wife at the store. AR 74. He could lift five or six pounds. AR 69. He had mood problems and depression. AR 69. He took medication for his depression, but it was prescribed only in the prior three months. AR 69-70. He slept better on this medication, which reduced is pain level reduces from level six or seven to about level three. AR 70-71. One of his doctors recommended a second surgery, but his primary care doctor said he recommended against surgery. AR 71. Plaintiff recounted he also took part in physical therapy and received injections. AR 77.

At the 2016 hearing, Plaintiff testified that if he lifted something heavy, he would not move the next day. AR 103. He walked regularly for exercise, but could stand only for about 30 minutes before needing to sit down and put his feet up; after laying down, he has to straighten his back. AR 107-09. He could lift and carry about three pounds. AR 107. He was last treated for his back pain two years ago. AR 110. He had received injections; his doctor recommended something more, but he had not undertaken further treatment. AR 110. He could still able to help his wife with shopping and household chores, and sometimes prepared meals. AR 106-07. He could drive for about an hour-and-a-half. AR 107-08. He received no mental health treatment and he was not then taking medication for depression. AR 105-06.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements "concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely consistent with the objective medical evidence and other evidence," for the reasons explained in the decision. AR 34. The ALJ offered at least three reasons for discounting Plaintiff's subjective symptom testimony: (1) conflict with the objective evidence and other evidence in the record; (2)

11

conservative treatment; and (3) Plaintiff's activities of daily living. AR 26-27. As explained below, the ALJ provided legally sufficient reasons for discrediting Plaintiff's subjective symptom testimony.

First, the ALJ discredited Plaintiff's symptom testimony because his allegations were not supported by objective medical evidence. AR 34-37. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); see also Rollins, 261 F.3d at 857. The record shows numerous objective findings and conclusions that conflict with Plaintiff's allegations of total disability. For example, (1) psychological examinations showed mild findings (AR 569-70, 633); (2) physical examination findings showed normal range of motion, normal muscle strength, normal reflexes, and normal gait (AR 569-70, 623-24, 704, 734, 798); (3) diagnostic testing, including MRIs and x-rays, showed mild degenerative disc disease (AR 140, 570-71, 609, 729-32, 895); (4) orthopedic examiner Dr. Timothy Ross found Plaintiff "exhibited subjective tenderness which outweigh[ed] objective findings" (AR 571); (5) Dr. Ross noted "[l]imited effort" rendered by Plaintiff on his range of motion testing (AR 569); (6) Dr. Ross found straight leg raising test was negative in the seated position to 90 degrees, despite Plaintiff's complaints "of lower back pain in the supine position at 10 degrees (AR 569-70); and (7) Plaintiff's psychiatric evaluation was largely unremarkable, revealed a high level of functioning, and showed that Plaintiff "did not seem to have any impairment in the ability to reason and make social, occupational, and personal adjustments" (AR 630-36). In light of this evidence, the ALJ properly considered inconsistency with the objective medical evidence as one of at least two valid factors supporting the decision to discount Plaintiff's symptom testimony. See Burch, 400 F.3d at 681.

Second, the ALJ discredited Plaintiff's symptom testimony because he received conservative treatment. AR 34-35. The treatment a claimant received, especially when conservative, is a legitimate consideration in a credibility finding. See Parra, 481 F.3d at 750-51 ("evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"). Since his 2005 surgery, Plaintiff largely reported to his physicians, as he did at the 2013 hearing, that his pain was level three or less. AR 70-71, 526, 529, 532, 535, 589-90, 598, 601, 604, 607, 624, 665, 669, 681. Further, he was often prescribed non-prescription pain medication, experienced relief from over-the-counter medication, or was taking no medication at all. AR 63, 104-05, 568, 635, 672, 677, 682, 701, 710-11. See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request, medical treatment commensurate with the "supposedly excruciating pain" alleged); see also Lindquist v. Colvin, 588 F. App'x 544, 547 (9th Cir. 2014) (ALJ properly discounted claimant's testimony in part because symptoms were controlled by medication). Moreover, as Plaintiff acknowledged at the hearings, he participated in physical therapy, and walking, exercise, and other conservative treatments helped. AR 51-52, 63, 73, 77, 107, 677, 682. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ properly rejected claimant's subjective complaints where medical records showed that she responded favorably to conservative treatment of physical therapy and medication); Kumar v. Berryhill, 2017 WL 6028701, at *2 (C.D. Cal. Dec. 5, 2017) (credibility determination supported in part because claimant received essentially conservative treatment, such as physical therapy, medication, walking regime, and stretching). The ALJ's finding regarding conservative treatment was a clear and convincing reason to discount Plaintiff's statements of a disabling condition. See Tommasetti, 533 F.3d at 1040; Fair v. Bowen,

13

885 F.2d 597, 604 (9th Cir. 1989) (finding that the claimant's allegations of persistent, severe pain and discomfort were belied by conservative treatment).

Third, the ALJ also discounted Plaintiff's subjective symptom testimony based on his daily activities, specifically, his ability to help out around the house and run errands. AR 35. The Ninth Circuit has "repeatedly warned that ALJs must be inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). "[O]nly if his level of activity [was] inconsistent with [a claimant's] claimed limitations would these activities have any bearing on his credibility." Garrison, 759 F.3d at 1016

Here, without reaching the issue, even if the ALJ erred in relying on Plaintiff's activities of daily living as a basis for discounting his symptom testimony, as long as there remains "substantial evidence supporting the ALJ's conclusions" and the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion," the error is deemed harmless and does not warrant reversal. Batson, 359 F.3d at 1195-97; Williams v. Comm'r, Soc. Sec. Admin., 2018 WL 1709505, at *3 (D. Or. Apr. 9, 2018) ("Because the ALJ is only required to provide a single valid reason for rejecting a claimant's pain complaints, any one of the ALJ's reasons would be sufficient to affirm the overall credibility determination.")

The Court finds that ALJ provided sufficiently specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony, specifically,

the conflict with objective medical evidence and other evidence in the record, which cannot be the only ground, and Plaintiff's conservative treatment, in discounting Plaintiff's subjective symptom testimony. Those grounds, together, are sufficient to affirm the ALJ's decision on the issue.

## IV.

## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: September 10, 2018

_____
JOHN D. EARLY
United States Magistrate Judge